# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| MICHELLE LEE RECTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-236-TLS |
| | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Michelle Lee Rector, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. The Plaintiff claims that the Administrative Law Judge (ALJ) committed error when he did not develop a full and fair record for an unrepresented claimant, which impacted the limitations he identified in the residual functional capacity, and when he did not award at least a closed period of disability.

For the reasons stated in this Opinion and Order, the Court affirms the Commissioner's decision.

## BACKGROUND

In December 2013, the Plaintiff filed an application for supplemental security income under Title XVI, alleging an onset date of February 11, 2013. She claimed an inability to work due to a compound fracture of her right foot and ankle, which she sustained in a car accident. An ALJ conducted a hearing, in which the Plaintiff and a vocational expert (VE) participated. He issued a written decision on May 23, 2016, denying the Plaintiff's request for benefits. The

Appeals Council denied the Plaintiff's request to review the ALJ's decision, thereby making it the Agency's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 416.1455(b), 416.1481, 422.210(a).

In the written decision, the ALJ followed the five-step process outlined in 20 C.F.R. § 416.920(a)(4). At step one, he found that the Plaintiff had not engaged in substantial gainful activity since the application date. At steps two and three, he found that the Plaintiff had a combination of severe impairments—fracture of right fibula, talus, open ankle fracture status-post open reduction internal fixation, osteochondral lesion of right talus status-post arthroscopy with excision, diffuse osteopenia, post-traumatic arthritis, reflex sympathetic dystrophy, and status-post right Achilles tendon lengthening, right medial cuneiform osteotomy and total ankle replacement—but that none of them met or equaled an impairment in 20 C.F.R. §§ 416.920(d), 416.925, or 416.926. The ALJ noted that the Plaintiff had fractured her right ankle in February 2013 and undergone three surgical interventions, but that the record did not reflect gross anatomical deformity or inability to ambulate effectively for a continuous period of twelve months. Rather, the Plaintiff returned to weight bearing status within a few months after each surgery. While the Plaintiff had an antalgic gait, she was able to ambulate effectively with assistive devices.

At step four, the ALJ determined that the Plaintiff had the residual functional capacity (RFC) to perform sedentary work, as defined in 20 C.F.R. § 416.967(a). Additionally, she could lift/carry and push/pull no more than ten pounds. The Plaintiff could sit for six hours with her right foot elevated twelve inches off the ground, and could stand or walk with the use of crutches no more than two hours out of an eight-hour day. The ALJ further found that the Plaintiff was

limited to occasional climbing, stooping, kneeling, crouching, and climbing ramps and stairs. She could never crawl or climb ladders, ropes, or scaffolds.

At the final steps, the ALJ concluded that jobs existed in significant numbers in the national economy that the Plaintiff could perform given her age, education, work experience, and RFC. The ALJ thus determined that the Plaintiff had not been under a disability within the meaning of the Social Security Act since December 4, 2013, the date of her application.

This Court has jurisdiction of the Plaintiff's complaint for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A claimant is disabled only if she shows an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). She has the burden of proving disability. *See id.* § 423(d)(5)(A). She must establish that her physical or mental impairments "are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a

scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

**ANALYSIS**

A.     **Duty to Develop a Full and Fair Record**

The Plaintiff elected to represent herself at the hearing before the ALJ. On appeal to this Court, she argues that, because she was not assisted by counsel, the ALJ had a duty to

4

"scrupulously and conscientiously . . . probe into, inquire of, and explore for all the relevant facts." *Thompson v. Sullivan*, 933 F.2d 581, 585–86 (7th Cir. 1991) (first quoting *Smith v. Sec'y*, 587 F.2d 857, 860 (7th Cir. 1978), then citing *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). According to the Plaintiff, the ALJ failed to fulfill this duty when he did not question the Plaintiff about "what a bad day was like and how many bad days Plaintiff experienced in a typical month" as it related to her reflex sympathetic dystrophy impairment and "various persistent pain problems." (Br. in Supp. 9, ECF No. 18.) She complains that, as a consequence, the ALJ failed to ask the VE any question pertaining to the number of absences that would be tolerated in a competitive employment setting. Additionally, the Plaintiff argues that the ALJ "did not conduct the required obesity analysis" or inquire "how obesity may have affected sitting, walking, and standing in relation to her lower extremity problems." (*Id.* at 10.) According to the Plaintiff, had the ALJ conducted the appropriate inquiries, the RFC would have included limitations related to her absences and obesity. Finally, the Plaintiff asserts that the ALJ had a duty to ask the VE about his methodology for allocating jobs, and, in any event, it was error for the ALJ to rely on the VE's testimony about the addresser job given the Seventh Circuit's concerns about the job as expressed in *Alaura v. Colvin*, 797 F.3d 503, 508 (7th Cir. 2015). The Plaintiff concludes that the record shows that she was "prejudiced by the lack of counsel." (Br. in Supp. 11.)

The Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (first citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); then citing *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). Generally, only

omissions that are considered significant will lead to a finding that the Commissioner failed to assist a pro se claimant in fully and fairly developing the record. *Id.* (citing *Luna*, 22 F.3d at 692). Significance, in turn, is predicated on whether the omission is prejudicial. *Id.* (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (quoting *Binion*, 13 F.3d at 246).

The Plaintiff does not contend that there were any gaps in the medical records that the ALJ should have discovered and filled. Rather, the additional evidence the Plaintiff maintains that the ALJ should have gathered was in the form of her testimony, which she maintains would have been provided had the ALJ inquired about her bad days and how her obesity impacted her sitting, walking, and standing. The transcript reveals that the ALJ asked the Plaintiff whether pain medication was effective in alleviating the pain she experienced in her ankle. Based on her answer, he further asked for clarification regarding how many days per week it helped. The Plaintiff indicated that the pain medication worked two days per week to bring her pain from a level ten to a level six. (R. 58.) The ALJ also asked her numerous questions about her ability to sit, stand, and walk, with and without crutches. (R. 60–65.) Logically, the Plaintiff's answers about her own abilities took her entire physical condition into account, including her weight. That the ALJ did not ask the Plaintiff to identify how much of her difficulty related to, or was aggravated by, her obesity (of which there is no dispute that he was aware of), is not a failure to develop the record. Notably, the Plaintiff has not even indicated how her obesity further impaired her ability to work.

The Plaintiff does not explain how an explicit reference to "bad days" was necessary to

interpret the Plaintiff's testimony regarding the extent pain medication alleviated her pain. The Court would be hard pressed, absent employing a high degree of speculation, to say that the specific line of questioning the Plaintiff argues was missing was significant, meaning that this specific line of questioning would have led to the inclusion of additional limitations in the RFC. It is the ALJ's job to assess whether a claimant is exaggerating the symptoms of a medical condition. To evaluate credibility, an ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p. The Plaintiff's argument ignores the ALJ's conclusions regarding the weight he assigned to her statements. She has not specifically challenged the factors that the ALJ cited in his written decision to find that the Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not consistent with the evidence. Accordingly, her claim that additional testimony would have alerted the ALJ to limitations regarding potential absences from work, and that this testimony would have necessarily led the ALJ to include additional limitations in the RFC, is mere conjecture and speculation.

Turning to the VE's testimony, the Plaintiff contends that the ALJ breached his duty to the Plaintiff when he did not inquire about the VE's methodology for allocating the number of jobs available. She also criticizes the ALJ for not seeking clarification regarding one of the jobs the VE identified. As stated above, the Plaintiff must show a significant omission that caused the Plaintiff prejudice.

The Commissioner bears the burden at step five to establish that the claimant can, considering her RFC, age, education, and work experience, perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.912(g), 416.960(c). In making

7

the step five determination, the ALJ generally relies on the Dictionary of Occupational Titles (DOT) for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. *See* 20 C.F.R. § 416.966(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the *DOT* by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

Here, the Plaintiff has failed to show that the VE's testimony did not comport with the rules set forth in the Commissioner's Social Security Rulings, or that it was otherwise unreliable. Before the ALJ can rely on a VE's testimony, she must inquire about any possible conflict between the VE's testimony and information provided in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (noting that SSR 00-4p unambiguously sets out the ALJ's affirmative duty to inquire about conflicts ). Here, the ALJ made the required inquiry. (R. 76.) The Plaintiff, however, asserts that more was required to adequately develop the record.

In complaining that the ALJ did not inquire as to the methodology the VE used to allocate the job numbers from the broader Office of Economic Statistics categories to the narrower DOT job categories, the Plaintiff cites to *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015), which expressed concern with the source and validity of statistics that VE's testify to at disability hearings. However, "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Willis v. Berryhill*, 3:16-CV-142, 2017 WL

3297778, at *4 (N.D. Ind. Aug. 1, 2017) ("While it is correct that the Seventh Circuit has questioned the accuracy of job statistics from vocational experts, the Seventh Circuit has not overruled its precedent holding that the ALJ is entitled to accept a vocational expert's testimony where no one questions the vocational expert's foundation or reasoning.") (quotations and citations omitted); *Chavez v. Berryhill*, 1:16-CV-314, 2017 WL 3124432, at *5 (N.D. Ind. July 24, 2017) ("Without any holding reversing *Donahue*, Courts have refused to remand solely for challenges to VE methodology, citing a lack of guidance from the Seventh Circuit."); *Adamec v. Berryhill*, 15 C 11811, 2017 WL 1196920, *6 (N.D. Ill. March 31, 2017) ("[T]he Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely dicta and does not merit remand."); *Weir v. Colvin*, No. 15-CV-532, 2016 WL 4083524, at *3 (W.D. Wis. Aug. 1, 2016) ("[Plaintiff's] argument [about VE methodology] is well taken. But [plaintiff's] criticism of the VE's methodology is not a basis for remand until appellate precedent instructs that relying on the methodology is reversible error.").

The Plaintiff has offered no argument, nor made any showing, concerning what an inquiry about the VE's methodology might have revealed about the number of available jobs or how it would have otherwise altered the outcome of the case. She offers no data to suggest that the VE's numbers were not accurate.[1] The Commissioner has not promulgated regulations that

---

[1] Any data or reasoning underlying the VE's bottom line must be "available on demand" so that the claimant may test the reliability of the VE's testimony. *McKinnie v. Barnhart*, 368 F.3d 907, 910–11 (7th Cir. 2004) (quoting *Donahue*, 279 F.3d at 446). No rule or practice requires a VE to produce the evidence if it is not requested. To that end, the Seventh Circuit has "refuse[d] to endorse a system that drags out every Social Security hearing to an interminable length." *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008) (stating that the "'available on demand'" rule . . . can be applied to achieve the proper balance between the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings"). The Plaintiff has cited no legal authority requiring an ALJ to make the inquiry on behalf of an unrepresented claimant.

9

prescribe any specific methodology for VEs to use to estimate how many jobs are in a particular occupation. *See* 20 C.F.R. 416.966(e). Without any such evidence, the absence of an inquiry about methodology cannot be considered a significant omission that prejudiced the Plaintiff.

Lastly, the Plaintiff asserts that it was the ALJ's duty to "press the VE on the issue of whether the addresser job is still an actual job." (Br. in Supp. 11 (citing *Alaura*, 797 F.3d at 508).) During the hearing, the vocational expert testified that there are 104,000 addresser jobs in the nation (Tr. 80). The vocational expert also identified two other examples of representative occupations existing in significant numbers in the national economy that an individual with Plaintiff's RFC and vocational profile could perform (Tr. 80). Therefore, even assuming that the addresser job is not an available occupation, the Commissioner satisfied her burden at step five by identifying "one or more occupations" for which a significant number of jobs exist in the national economy that a claimant can perform given her medical and vocational profile *See* 20 C.F.R. § 416.966(b). Indeed, even in *Alaura*, the only case cited by the Plaintiff, similar criticism was not grounds for reversal.

### B. Closed Period of Disability

To establish a "disability" the claimant must show she is suffering from a medically determinable physical or mental impairment which can be expected to last for at least 12 months. 42 U.S.C. § 1382c(a)(3)(A). Additionally, an individual shall be considered disabled "only if h[er] physical or mental impairment or impairments are of such severity that she is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work." *Id.* § 1382c(a)(3)(B). This

inability to engage in substantial gainful work must itself last, or be expected to last, for at least twelve months. *Barnhart v. Walton*, 535 U.S. 212, 217–22 (2002) (upholding the SSA's requirement that the inability to work, not just the impairment upon which it is based, last twelve months).

The Plaintiff argues that, "at a minimum, the ALJ should have found her disabled for a closed period of disability that started at the alleged onset date of February 11, 2013, through at least a reasonable time of healing after the January 16, 2015, ankle replacement surgery." (Br. in Supp. 13.) The Plaintiff argues that it took three major surgeries over two years to reach the level of functionality that her doctor reported on May 11, 2015, four months after her last surgery. Moreover, the Plaintiff further asserts that because these limitations support a level of functionality that restrict even sedentary work, remand is necessary for the ALJ to consider the closed period of disability.

Nothing in the record suggests that the ALJ did not consider the possibility of a closed period of disability. He acknowledged that the Plaintiff had undergone multiple surgeries, but found that the "longitudinal record reflects that [the Plaintiff] significantly improved following *each* surgery." (R. 30 (emphasis added).) The Plaintiff does not attempt to address her functionality after each surgery, or the exams contemporaneous to or following those surgeries, but simply points to the fact that she had multiple surgeries over the course of two years as proof that she had the same limitations throughout the entire two year period.

Reading between the lines, the essence of the Plaintiff's challenge is to the ALJ's RFC assessment, but she presents no significant argument on the point. She asserts only that the May 2015 limitations were more restrictive than the definition of sedentary work. Sedentary work

11

contemplates occasional standing and/or walking in an eight-hour day. 20 C.F.R. § 404.1567. Her physician's work limitations were stated as follows: "sitting work only and no excessive walking at anytime. The patient should not lift/carry 1–10 lbs, lift/carry 11-25 lbs, lift/carry 26–40 lbs or climb." (R. 503.) Putting aside the fact that "no excessive walking" is not necessarily at odds with the occasional standing and walking required for sedentary work, there is another problem with the Plaintiff's argument. The RFC the ALJ arrived at was based on his review of more than two years worth of medical records. The Plaintiff's challenge to the RFC assessment is based on one isolated record that is dated four months after total ankle replacement, medial cuneiform osteotomy, and Achilles tendon lengthening. The Plaintiff's argument also relies on an assumption about the Plaintiff's level of functioning prior to that record. An assumption, unaccompanied by any argument or analysis of the record concerning this prior time frame, is not a meaningful challenge to findings that are grounded in medical evidence from the record.

The Plaintiff asserts that the ALJ should have clarified what the physician meant by excessive walking. But the ALJ's analysis did not require clarification of this term. He acknowledged that it was a post-surgery note that did not provide a full functional evaluation or time frame. Importantly, the ALJ also explained why the rest of the record supported the RFC. The Plaintiff points to no other medical evidence in the record that would suggest more restrictions than what the ALJ determined the Plaintiff could do: sit for six hours with her right foot elevated twelve inches off of the floor, and stand or walk with the use of crutches no more than two hours total in an eight-hour workday. The Plaintiff does not address the ALJ's finding, based on his consideration of her medical records, that multiple diagnostic imaging noted stable

findings with no gross anatomical deformity, and examinations reflected that the Plaintiff returned to weight-bearing status within a few months of each surgery, with intact motor strength, sensation, and reflexes. The Plaintiff does not allege that the ALJ assigned inappropriate weight to any of the medical opinions, or that he erred in assessing her subjective complaints and symptoms. Nor does she question his assessment of the third-party function report provided by the Plaintiff's mother.

The only challenge the Plaintiff lodges with any specificity is to the ALJ's finding regarding her level of activity, specifically to walking. (Br. in Support 5 n.24.) She asserts that it "defies logic that Plaintiff could have ever walked six miles a day during this period given her weight gain and the condition of her lower extremities." (*Id.*) She contends that it should have been obvious that the medical record that notes otherwise is a mistake, and was actually a reference to minutes walked, not miles. The Plaintiff's argument about what is logical would have the ALJ play doctor by opining that the Plaintiff's weight gain would not have occurred if the Plaintiff had truly been walking for exercise leading up to the August 21, 2014, office visit. The orthopedic record shows that this visit was twenty-three weeks post surgery and that the Plaintiff was "doing well." (R. 277–78.) The plan going forward to address her "sharp and achy pain" that occurred "intermittently" (R. 377) was as follows:

> I think she definitely ought to stop walking for exercise and [choose] either cycling or swimming as her primary form of aerobic conditioning. An elliptical trainer would be better even relative to walking activities. I think she definitely still should keep working out and lose the extra weight she's gained over the last 2 years. We talked about the future that likely arthritis may develop in this ankle but before the arthritis develops if it becomes very painful we could also consider fresh osteochondral allograft if necessary. Recommended daily activity status: activity as tolerated.

(R. 378.) The Plaintiff's physician did not find that it defied logic for the Plaintiff to have gained

weight over two years despite her reported level of activity.² In any event, the RFC did not require the Plaintiff to sustain a high level of activity. The ALJ limited the Plaintiff to *sedentary* work and recognized the use of crutches and need to elevate her ankle. The ALJ also included postural limitations to allow for the Plaintiff's comfort and to guard against exacerbations of symptoms. The Plaintiff has not articulated, with citations to the longitudinal medical record, how this RFC failed to take into account her limitations. On this record, remand is not required.

## CONCLUSION

For the reasons stated above, the Court AFFIRMS the Commissioner's decision.

SO ORDERED on May 10, 2018.

s/ Theresa L. Springmann<br>
CHIEF JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT

---

² This is not surprising given the myriad of factors that can lead to weight gain, such as hormones, medications, changes in eating habits, stress, or lack of sleep. It is not even clear from the record whether walking was a consistent, increased, or reduced level of activity from what the Plaintiff engaged in prior to her car accident.